**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAUL CORNELIO-PENA, also known
as Raul Puente-Cuevas,

Defendant-Appellant.

No. 04-3478

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CR-40090-SAC)**

---

Ronald E. Wurtz, Assistant Federal Public Defender (David J. Phillips, Federal
Public Defender, with him on the brief), Topeka, Kansas, for Defendant-
Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States
Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **KELLY, BALDOCK,** and **MURPHY,** Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Defendant-Appellant Raul Cornelio-Pena was convicted in the United States District Court for the District of Kansas of illegal reentry following deportation. The district court sentenced him to fifty-seven months' custody, based in part on a sixteen-level enhancement for prior deportation after a conviction for a felony crime of violence. The district court reasoned that solicitation to commit burglary of a dwelling is a crime of violence under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) (2003) ("USSG" or "Guidelines"). The district court also imposed an identical alternative sentence of fifty-seven months in the event the Guidelines were declared unconstitutional. Cornelio-Pena appealed his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because solicitation to commit burglary of a dwelling is a crime of violence under USSG § 2L1.2, and the district court's imposition of an alternative sentence rendered its non-constitutional *Booker* error harmless, we **affirm**.

## II. Background

In 1992, Cornelio-Pena, a citizen of Mexico, was convicted in Arizona of solicitation to commit burglary in the second degree.[1] He received three years'

---

[1]Under Arizona law, a person commits solicitation "if, with the intent to promote or facilitate the commission of a felony or misdemeanor, such person commands, encourages, requests or solicits another person to engage in specific

probation and was deported. Subsequently, Cornelio-Pena returned to the United States and was charged with, and pleaded guilty to, illegal reentry following deportation in violation of 8 U.S.C. § 1326(a). At sentencing, the district court applied § 2L1.2 of the November 5, 2003 version of the Guidelines. Cornelio-Pena's base offense level was eight. The district court applied a sixteen-level enhancement pursuant to USSG § 2L1.2(b)(1)(A)(ii), reasoning that solicitation of burglary is a crime of violence. The district court also applied a three-level downward adjustment for acceptance of responsibility and entry of a guilty plea, bringing Cornelio-Pena's adjusted offense level to twenty-one. Cornelio-Pena's criminal history category was determined to be IV, resulting in a Guidelines range of fifty-seven to seventy-one months. The district court sentenced Cornelio-Pena to fifty-seven months' custody. Recognizing the uncertainty surrounding the constitutionality of the Guidelines at the time of Cornelio-Pena's sentencing, the district court also announced an alternative sentence of fifty-seven months.

## III. Discussion

### A. Crime of Violence

---

conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission." Ariz. Rev. Stat. § 13-1002. A person commits burglary in the second degree if he "enter[s] or remain[s] unlawfully in or on a residential structure with the intent to commit any theft or any felony therein." *Id*. § 13-1507.

Cornelio-Pena first argues the district court erred in concluding solicitation of burglary is a crime of violence under USSG § 2L1.2(b)(1)(A)(ii). We review a district court's interpretation of the Guidelines *de novo*. *United States v. Torres-Ruiz*, 387 F.3d 1179, 1180–81 (10th Cir. 2004). "Generally speaking, we interpret the Sentencing Guidelines according to accepted rules of statutory construction. In interpreting a guideline, we look at the language in the guideline itself, as well as at the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission. Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id*. at 1181 (citations, quotations, and alteration omitted).

It is uncontested that burglary of a dwelling is a crime of violence under USSG § 2L1.2(b)(1)(A)(ii). We must decide whether solicitation to commit burglary of a dwelling is also a crime of violence under this provision. This issue is one of first impression in the Courts of Appeals.

Section 2L1.2(b)(1)(A)(ii) of the Guidelines provides for a sixteen-level enhancement if the defendant was previously deported, or unlawfully remained in the United States, after a conviction for a felony crime of violence. "Crime of violence" is defined in the section's commentary as

any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

USSG § 2L1.2 cmt. application n.1(B)(iii). Application Note 5 further provides that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." *Id*. § 2L1.2 cmt. application n.5.

Cornelio-Pena argues that because solicitation is not expressly mentioned in the application note, solicitation of a crime that otherwise meets the definition of "crime of violence" is not itself a crime of violence under the canon of statutory construction *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). Cornelio-Pena cites *United States v. Cardenas*, in which this court held that 18 U.S.C. § 924(c) does not prohibit transportation of firearms. 864 F.2d 1528, 1534 (10th Cir. 1989). In *Cardenas*, we noted that the statute at issue expressly prohibited only using or carrying a firearm during a drug trafficking offense. *Id*. Moreover, we found it persuasive that another provision of the same statute used the term "transport" in criminalizing the transportation of firearms in interstate commerce. *Id*. Thus, we concluded Congress knew how to use the term "transport," and Congress' failure to include the term in the relevant

statutory provision indicated its intent not to prohibit the transportation of

firearms during a drug trafficking offense. *Id.* at 1534.

The term "solicitation" is used throughout the Guidelines,[2] and thus it is

clear the Sentencing Commission knew how to use the term. The Commission's

failure to include solicitation in the application note in § 2L1.2, however, is not

---

[2]The term "solicitation" is used in the Guidelines in three ways. First, solicitation is included in the section of the Guidelines relating to "Other Offenses," along with conspiracy and attempt. USSG § 2X1.1. This provision requires the application of the base offense level for the underlying offense, plus any adjustments for specific offense characteristics relating to the fact that the crime was inchoate. *Id.* The provision is only to be applied when the crime of solicitation is not expressly covered by another offense guideline section. *Id.* § 2X1.1(c)(1); *see also, e.g., id.* § 2A4.1 cmt. application n.4 (referencing adjustments in USSG § 2X1.1 with respect to conspiracy, attempt, or solicitation to kidnap). Second, the Guidelines specifically include solicitation of certain offenses as offense conduct. *E.g., id.* § 2C1.1 (Soliciting a Bribe); *id.* § 2A1.5 (Solicitation to Commit Murder). Finally, solicitation appears in the commentary to several Guidelines' provisions. Although none of these provisions are identical to the application note at issue here, they are similar in that they require solicitation to be treated like the underlying offense in certain circumstances. *Id.* § 1B1.3 cmt. application n.6 ("Unless otherwise specified, an express direction to apply a particular factor only if the defendant was convicted of a particular statute includes the determination of the offense level where the defendant was convicted of conspiracy, attempt, solicitation, aiding or abetting, accessory after the fact, or misprision of felony in respect to that particular statute"); *id.* § 1B1.3 cmt. application n.10 ("In the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant."); *id.* § 2C1.1 cmt. background ("solicitations and attempts [to commit bribery] are treated as equivalent to the underlying offense").

dispositive of the Commission's intent in this case. Unlike the statute in *Cardenas*, which expressly criminalized only using or carrying a firearm, the application note at issue here uses the term "include" before listing aiding and abetting, conspiracy, and attempt. USSG § 2L1.2 cmt. application n.5. We must give effect to the term "include." *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001).

"Include" can be interpreted both as a word of illustrative application and as a word of limitation. Black's Law Dictionary 763 (6th ed. 1990). The commentary to the Guidelines' general application principles, however, expressly states that "[t]he term 'includes' is not exhaustive." USSG § 1B1.1 cmt. application n.2. Thus, by using the term "include" in the application note, the Commission clearly expressed its intent that the offenses listed in the note were not exhaustive, and we do not apply *expressio unius est exclusio alterius*. Instead, based on the Commission's articulation, offenses similar to aiding and abetting, conspiring, and attempting to commit offenses that otherwise meet the definition of "crime of violence" are included in § 2L1.2(b)(1)(A)(ii).

Although no circuit has addressed the crime of solicitation under USSG § 2L1.2, several circuits have addressed solicitation under § 4B1.1, a similarly constructed provision of the Guidelines. Section 4B1.1 provides for sentencing enhancements for career offenders. A career offender is defined as a person who,

*inter alia*, "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id*. § 4B1.1(a). Similar to the application note at issue in this case, the career offender provision contains an application note which states, "'[c]rime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id*. § 4B1.2 cmt. application n.1. In *United States v. Shumate*, the Ninth Circuit examined whether solicitation of delivery of marijuana qualifies as a controlled substance offense under the career offender provision. 329 F.3d 1026, 1028 (9th Cir. 2003). The court reasoned that the omission of solicitation from the offenses listed in the application note was not legally significant because, under the Guidelines, the term "includes" is not exhaustive. *Id*. at 1030–31. Thus, the court concluded solicitation of delivery of marijuana is a controlled substance offense. *Id*.

The Sixth Circuit reached the opposite result in *United States v. Dolt* when it concluded that solicitation to traffic in cocaine is not a controlled substance offense under the career offender provision. 27 F.3d 235, 240 (6th Cir. 1994). The court noted that "the fact that the Sentencing Commission did not include solicitation in its list of predicate crimes in [the application note] is evidence that it did not intend to include solicitation as a predicate offense for career offender status." *Id*. at 239. The court, however, did not address the use of the term

-8-

"include" or the definition of that term provided in the Guidelines' general application principles. *See Shumate*, 329 F.3d at 1031.

Finally, the Second Circuit has implicitly concluded that because of the term "include," the list of offenses in the application note to the career offender provision is merely illustrative. *United States v. Liranzo*, 944 F.2d 73, 79 (2d Cir. 1991). In *Liranzo*, the Second Circuit examined whether criminal facilitation of the sale of cocaine is a controlled substance offense. *Id.* at 78–79. Although the court ultimately concluded criminal facilitation is not sufficiently similar to aiding and abetting, conspiracy, and attempt to be encompassed by the application note, it observed that the application note "may not be an exhaustive list" and proceeded to decide "whether . . . criminal facilitation should be included in that list."[3]  *Id.* at 79.

---

[3]Two circuits have held that solicitation is a crime of violence under the career offender provision. *United States v. Cox*, 74 F.3d 189, 190 (9th Cir. 1996) (solicitation of murder); *United States v. Walker*, 181 F.3d 774, 780–81 (6th Cir. 1999) (solicitation to commit aggravated robbery). These decisions are not persuasive in this case, however, because the definition of "crime of violence" in the career offender provision is substantially different than that contained in USSG § 2L1.2. Under the career offender provision, a crime of violence includes, *inter alia*, "any offense . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a). The holdings in *Cox* and *Walker* are based, at least in part, on this definitional wording. *Cox*, 74 F.3d 190 (observing that "ask[ing] someone to murder your wife . . . involves a high degree of threat of physical force against one's wife"); *Walker*, 181 F.3d at 781 ("solicitation to commit aggravated robbery [in Tennessee] inherently involves conduct that presents a serious potential risk of injury to another"). *But see United States v. Shumate*, 329 F.3d 1026, 1030 (9th

In any event, because the Guidelines expressly provide that the term "include" is not exhaustive, crimes of violence under USSG § 2L1.2 are not limited to aiding and abetting, conspiring, and attempting to commit offenses that otherwise meet the definition of "crime of violence." Instead, crimes of violence include offenses that are sufficiently similar to aiding and abetting, conspiracy, and attempt when the underlying offense is a crime of violence. Thus, we must now decide whether solicitation is sufficiently similar to aiding and abetting, conspiracy, and attempt, such that solicitation to commit burglary of a dwelling is a crime of violence.[4]

_____

Cir. 2003) (arguing that *Cox* relied on the use of "include" in the application note to conclude solicitation was a crime of violence).

Additionally, Cornelio-Pena argues our decision should be informed by *Coronado-Durazo v. INS*, 123 F.3d 1322 (9th Cir. 1997), and *Leyva-Licea v. INS*, 187 F.3d 1147 (9th Cir. 1999). In these cases, the Ninth Circuit concluded that Arizona's solicitation statute is not a law relating to a controlled substance or an aggravated felony under § 241(a)(2) of the Immigration and Nationality Act when the underlying offense solicited is a narcotics violation. *Coronado-Durazo*, 123 F.3d at 1326; *Leyva-Licea*, 187 F.3d at 1150. These cases are inapposite, however, because the statutory definition at issue did not contain expansive language similar to the term "include" used in the Guidelines. *Leyva-Licea*, 187 F.3d at 1150 ("the Controlled Substances Act neither mentions solicitation nor contains any broad catch-all provision that could even arguably be read to cover solicitations").

[4]This court's determination of whether solicitation of burglary is a crime of violence under the Guidelines is not dictated by Arizona state law regarding whether solicitation is a crime of communication or a crime of violence. In *Taylor v. United States*, the Supreme Court rejected the contention that the term "burglary" in the Armed Career Criminal Act "means 'burglary' however a state chooses to define it." 495 U.S. 575, 579, 592 (1990) (quotation omitted). Instead, the Court concluded Congress intended burglary to mean generic burglary

A person commits solicitation if he commands, encourages, requests, or solicits another person to commit a crime with the intent to promote the commission of that crime. *E.g.*, Ariz. Rev. Stat. § 13-1002; Model Penal Code § 5.02. As with most crimes, solicitation requires both *mens rea* and *actus reus*. Because the *mens rea* and *actus reus* required for solicitation are similar to those required for aiding and abetting, conspiracy, and attempt, we conclude that solicitation is sufficiently similar to the offenses listed in the application note to be encompassed by the note.

Conspiracy involves an agreement between two or more people for the purpose of promoting or committing a crime. *E.g.*, *United States v. Small*, 423

---

as currently defined in the criminal codes of most states. *Id*. at 598. The Court reasoned: "[i]t seems to us to be implausible that Congress intended the meaning of 'burglary' . . . to depend on the definition adopted by the State of conviction"; such a conclusion would lead to "the unfairness of having enhancement [under Federal law] depend upon the label employed by the State of conviction." *Id*. at 589–90; *cf. Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119–20 (1983) (noting that state law that expunged conviction after completion of probation did not erase conviction for purposes of Gun Control Act because "federal program would be impaired if state law were to control"); *United States v. Nardello*, 393 U.S. 286, 293–95 (1969) (prohibition of extortion in violation of state law in the Travel Act is not limited to only those extortionate activities that a particular state defines as extortion). Similarly, state law characterizations of solicitation are irrelevant to our analysis of whether generic solicitation is a crime of violence under the Guidelines. The purpose of the Sentencing Commission is to provide "certainty and fairness" in sentencing and to avoid "unwarranted sentencing disparities." 28 U.S.C. § 991(b)(1)(B). Dependence on state law characterizations of what constitutes a crime of violence would inhibit these objectives.

F.3d 1164, 1182 (10th Cir. 2005); Model Penal Code § 5.03. Additionally, in some jurisdictions, conspiracy requires an overt act in furtherance of the conspiracy. *Compare United States v. Taylor*, 413 F.3d 1146, 1155 (10th Cir. 2005) (providing that conspiracy requires intent to commit crime and overt act in furtherance of that intent) and Neb. Rev. Stat. § 28-202 (stating that overt act is element of conspiracy) *with* Nev. Rev. Stat. § 199.490 (providing that overt act is not required for conspiracy to commit, *inter alia*, murder, robbery, and sexual assault) and Model Penal Code § 5.03(5) (stating no overt act requirement for felony of the first or second degree). We need not decide whether generic conspiracy under the Guidelines requires an overt act, however, to decide this case. Even where an overt act is required, the overt act can be that of any member of the conspiracy. *E.g.*, Neb. Rev. Stat. § 28-202(b); Model Penal Code § 5.03(5). A defendant need not perform an act beyond mere agreement in order to be guilty of conspiracy, so long as one conspirator performs an overt act. Thus, both conspiracy and solicitation require only intent that the underlying offense be committed and a minimal act such as agreeing or soliciting. Moreover, in some instances, conspiracy may be regarded as less severe than solicitation. A conspiracy is frequently formed between individuals who have already formed the intent to commit the underlying crime. *People v. Kauten*, 755 N.E.2d 1016, 1019 (Ill. App. Ct. 2001). Solicitation, on the other hand, may involve the recruitment

-12-

of one who has not yet formed criminal intent. *Id*. at 1020. Because conspiracy and solicitation have similar *mens rea* and *actus reus* requirements and are of similar severity, they are sufficiently similar to be included together in the application note.

A defendant is guilty of attempt if he intends to commit a crime and takes a substantial step toward the commission of that crime. *E.g.*, *United States v. Haynes*, 372 F.3d 1164, 1167 (10th Cir. 2004); Model Penal Code § 5.01. Thus, to be guilty of attempt a defendant must intend to commit the crime himself, while for solicitation a defendant need only intend that another person commit the crime. This difference, however, carries little practical distinction because in both instances, the defendant intends that the underlying crime be accomplished. Additionally, although the *actus reus* requirement for an attempt must go beyond mere preparation, it need not be a greater act than that required for solicitation. In many jurisdictions, soliciting another person to engage in criminal conduct can satisfy the substantial step requirement for an attempt. Model Penal Code § 5.01(2)(g); *United States v. Am. Airlines, Inc.*, 743 F.2d 1114, 1120 n.10 (listing states where solicitation can constitute an attempt). Thus, attempt and solicitation also have similar *mens rea* and *actus reus* requirements.

Aiding and abetting requires an intent to facilitate the commission of a crime, affirmative conduct furthering the commission of that crime, and proof that

the underlying crime was in fact committed. *United States v. Sarracino*, 131 F.3d 943, 946 (10th Cir. 1997). While the *mens rea* and *actus reus* requirements for aiding and abetting and solicitation are similar, aiding and abetting requires an additional element not present in solicitation. Aiding and abetting requires the actual commission of the underlying offense. As an inchoate crime, however, solicitation does not. Instead, if a person who is solicited to commit a crime actually engages in criminal conduct, the solicitor becomes culpable as an accomplice for the underlying crime. Model Penal Code § 2.06(1)–(3). Because aiding and abetting requires commission of the underlying offense, aiding and abetting and solicitation have important distinctions. Aiding and abetting in the application note, however, is only one offense in the illustrative list including the inchoate crimes of conspiracy and attempt. Because solicitation is at least as similar to conspiracy as aiding and abetting is to conspiracy, solicitation should be included in the list.[5]

---

[5]The notion that attempt, conspiracy, and solicitation are of similar severity, while aiding and abetting is more serious, is implicit in the Guidelines. Section 2X1.1 of the Guidelines provides for a three-level decrease in the offense level of a defendant convicted of attempt, conspiracy, or solicitation of a crime so long as the crime was not completed or was incomplete as a result of apprehension. USSG § 2X1.1(b). The portion of the provision relating to solicitation was amended in 1989 to be identical to the portions regarding attempt and conspiracy "to clarify the treatment of [solicitation] in a manner consistent with the treatment of attempts and conspiracies." U.S. Sentencing Guidelines Manual app. C amend. 238. The treatment of aiding and abetting in the Guidelines, however, is more harsh. Instead of decreasing the offense level, the offense level for aiding and

In *Liranzo*, the Second Circuit held that criminal facilitation is not sufficiently similar to aiding and abetting, conspiracy, and attempt to qualify as a controlled substance offense under the Guidelines' career offender provision. 944 F.2d at 79. Although we do not express any opinion as to the correctness of the Second Circuit's decision in *Liranzo*, the case is elucidative because the differences the court identifies between facilitation and the offenses listed in the application note do not similarly distinguish solicitation from those offenses. The court in *Liranzo* reasoned that, unlike aiding and abetting, conspiracy, and attempt, facilitation does not involve an intent to commit the underlying offense; rather, it requires only that the defendant know his conduct is aiding in the commission of a crime. *Id*. Solicitation, on the other hand, requires that the defendant intend that the underlying crime be committed. Moreover, in *Liranzo*, the court reasoned that a "facilitator's conduct . . . is . . . so attenuated from the final stages [of commission of the crime] that the role of the facilitator is only remotely related as a cause or contributor to the ultimate crime." *Id*. This attenuation is not present with solicitation. Solicitation seeks to induce the commission of a crime, and thus is the original, direct cause of the crime if it is subsequently committed.

---

abetting is the same as that for the underlying offense. *Id*. § 2X2.1.

-15-

Because the offenses listed in Application Note 5 to USSG § 2L1.2 are merely illustrative, and solicitation is sufficiently similar to the listed offenses to be encompassed by the application note, we conclude that solicitation of an offense that otherwise meets the definition of "crime of violence" is also a crime of violence. Therefore, the district court did not err in applying a sixteen-level enhancement to Cornelio-Pena's sentence.

**B. Constitutional *Booker* Error**

Cornelio-Pena next argues the district court committed constitutional *Booker* error when it found facts not admitted by the defendant or proved to a jury beyond a reasonable doubt in determining that Cornelio-Pena's prior conviction for solicitation of burglary was a crime of violence. This argument, however, is foreclosed by our recent decision in *United States v. Moore*. 401 F.3d 1220 (10th Cir. 2005). In *Moore*, we held that "scrutinizing the statutory definition of a prior offense to ascertain if it [is a "violent felony" under the Armed Career Criminal Act] involves a question of law for a court to decide, and not a question of fact for a jury." 401 F.3d at 1224. As a question of law, a district court's determination that a prior conviction is a "violent felony" does not implicate the Sixth Amendment concerns addressed in *Booker*. *Id*. at 1225; *see United States v. Booker*, 125 S. Ct. 738 (2005). Moreover, we recognized that because determining whether a prior conviction is a "violent felony" involves an inquiry

intimately related to whether a prior conviction exists, *Apprendi*'s exception for prior convictions applies to the inquiry of whether a prior conviction constitutes a "violent felony" as well. *Id*.; *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The same principles apply to enhancements under the Guidelines. Therefore, the district court did not commit constitutional *Booker* error in determining that Cornelio-Pena's prior conviction for solicitation of burglary was a crime of violence.[6]

## C. Non-Constitutional *Booker* Error

Cornelio-Pena also challenges his sentence under *Booker* because the district court viewed the Guidelines as mandatory. Under *Booker*, the district court's mandatory application of the Guidelines was erroneous. 125 S.Ct. at 764. Although Cornelio-Pena was sentenced before the Supreme Court's decision in *Booker*, he objected to the application of the Guidelines under *Blakely v.*

---

[6]In a Rule 28(j) letter, Cornelio-Pena argues that the Fourth Circuit's decision in *United States v. Washington* should inform our analysis. 404 F.3d 834 (4th Cir. 2005). *Washington* dealt with the applicability of the Sixth Amendment when a district court relies on information beyond the documents permitted by *Shepard v. United States* in determining that a prior conviction is a crime of violence. *Washington*, 404 F.3d at 841–42; *Shepard*, 125 S.Ct. 1254, 1263 (2005). *Washington* is inapplicable to the present case, however, because here the district court relied only on the fact of conviction and the statutory definition of solicitation to commit second degree burglary in determining Cornelio-Pena's prior conviction was for a crime of violence. *See United States v. Moore*, 401 F.3d 1220, 1225 n.2 (10th Cir. 2005); *United States v. Collins*, 412 F.3d 515, 522–523 (4th Cir. 2005).

*Washington* at his sentencing hearing. 542 U.S. 296 (2004). Thus, our review is for harmless error. *United States v. Labastida-Segura*, 396 F.3d 1140, 1142–43 (10th Cir. 2005). Under the harmless error analysis, we must remand for resentencing unless we determine, "without undue speculation, that the district court would have imposed the same sentence on remand." *United States v. Corchado*, 427 F.3d 815, 821 (10th Cir. 2005).

After announcing Cornelio-Pena's sentence under a mandatory application of the Guidelines, the district court announced an alternative sentence. The district court stated,

> In the event that the Federal Sentencing Guidelines are found to be unconstitutional and incapable of being constitutionally applied in this sentencing, then the Court will impose the following alternative sentence pursuant to 18 U.S.C. Section 3553(a), treating the guideline [sic] as advisory only: It is the judgment and order of the Court that the defendant is sentenced to the term of 57 months, and all other conditions that the Court has indicated are appropriate and shall be applied.

In *United States v. Serrano-Dominguez*, we held non-constitutional *Booker* error was harmless when the district court imposed an alternative sentence. 406 F.3d 1221, 1223–24 (10th Cir. 2005). Although the district court in *Serrano-Dominguez* explicitly applied the factors in 18 U.S.C. § 3553(a) as suggested by the Court in *Booker*, we have subsequently held that a district court need not explicitly examine each of the § 3553(a) factors so long as the court consults the Guidelines and the Presentence Investigation Report ("PSR"), which analyzes

several of the § 3553(a) factors. *Corchado*, 427 F.3d at 821. The district court did not specifically discuss the § 3553(a) factors in this case. It did, however, consult the Guidelines and the PSR and consider Cornelio-Pena's motion for a downward departure. Thus, the district court examined several of the § 3553(a) factors in imposing its alternative sentence. Because we are confident Cornelio-Pena would receive the same sentence on remand, the district court's error was harmless.

## IV. Conclusion

For the foregoing reasons, Cornelio-Pena's sentence is **AFFIRMED**.